The opinion of the Court was delivered by
Dargan, Ch.
The plaintiffs are the Commissioners of Public Buildings for Charleston District, declaring in their own names, and suing in their official capacity. The defendant, in the year 1848, had been indicted in the Court of Sessions for Charleston District for various misdemeanors; had been convicted, and was sentenced and fined by the-Court. There *7 were six several indictments, and the offences were for illicit traffic with slaves and for retailing spirits without a license. In each case he was sentenced to a term of imprisonment, in the aggregate amounting to 26 months, and his fines in the aggregate amounted to $600. He suffered the full measure of his punishment by imprisonment For the fines, writs of fieri facias have been issued, but they have all been returned nulla bona by the Sheriff. The said defendant was afterwards discharged in these cases under the ' provisions of the Act of Assembly of 1788, commonly called the Prison Bounds Act.
The act of 1827, among other things, provided that all fines and forfeitures incurred and imposed in any Court of Sessions for any Circuit District in the State, shall be paid to the Commissioners of Public Buildings for such district, to be applied in aid of their assessment for the purposes of the said Act.
By virtue of the provisions of this Act the plaintiffs, as the Commissioners of Public Buildings of Charleston District, were entitled to receive the fines imposed on the defendant, John W. Andrews. Those fines were properly payable to them. They had sought to enforce the collection of the fines by writs of fieri facias. To these the Sheriff has made a return of nulla bona. They have filed this bill, in which they charge, that the defendant, “by concealing his property, and fraudulently and surreptitiously covering and removing it from your orators, (the plaintiffs,) has escaped the exigency of the executions of fieri facias heretofore issued, and has further fraudulently endeavored to evade and escape the payment of the said fines. That the said John W. Andrews, by traffic, carries on a considerable business; that he has in his possession a stock of goods in a store or shop, also wagons and horses which your orators (the plaintiffs,) are informed and believe, and so charge are his own property, and purchased with his own means, if he would admit it. That the said John W. Andrews carries on a large trade on credit with the inhabitants of the neighborhood, and that at this time he has choses in action, debts, and other demands due and owing to *8 him; that sometime between the months of February, and August, 1852, the said John W. Andrews, having accumulated considerable means, agreed with one Samuel Lynes, Sen., who was then the owner of a tract of land in the Parish aforesaid, known as the twenty-two mile house tract, to purchase the said tract and the tavern and buildings thereon for the sum of $1,500, and at the same time, the said John W. Andrews took possession of the same; that is to say, one George Hough, who was up to, and at the time of the said agreement, the tenant of the said Samuel Lynes, Sen., attorned to the said John W. Andrews,and was accepted by him as tenant as aforesaid; that said John W. Andrews, by the fraudulent and corrupt connivance of the said Samuel Lynes, Sen., took no title or conveyance of the said premises, but kept the agreement secret at the time., and suffered the title to remain unchanged; that after the said agreement between the said Samuel Lynes, Sen., and the said John W. Andrews was made, the said John W. Andrews made an agreement with one John Donnelly, Jr., for the sale to him of one hundred and six acres of the said tract of land at and for the price and sum of two hundred dollars; that the said John W. Andrews, with the consent of John Donnelly, Jr., invoked the further connivance of the said Samuel Lynes, Sen., to make a title directly to the said John Donnelly for the said parcel of land, and to receive the said $200 on account of the purchase of the tract, which was agreed to by the said Samuel Lynes, and he accordingly executed a title to the said John Donnelly of the said one hundred and six acres with a warranty, and accepted the price from Donnelly and credited the said John W. Andrews therewith. The plaintiffs further charge, that at another time, the said John W. .Andrews paid another sum to the said Samuel Lynes of seven hundred dollars, part cash, and part by a credit on the store account, which the said Samuel Lynes owed the said John W. Andrews; and that afterwards, the said Samuel Lynes came to a settlement of the whole matter, and the balance adjusted between them was settled by the said John *9 W. Andrews giving to the said Samuel Lynes either his own note, or bond with John McCullers as surety, or the note or bond of John McCullers, with said Andrews as surety — other fraudulent contrivances are charged, not necessary to be particularly noticed.
The plaintiifs pray for process against John W. Andrews, Sen., Samuel Lynes, Sen., John Donnelly, Jr., John McCullers, and John W. Andrews, Jr., for discovery from them all; that the covenant agreement may be set aside, that a trust may be declared of the said lands, and that the same maybe decreed to be the property of the said John W. Andrews, and that the said stock of goods, horses, wagons and tract of land may be sold for the purpose of paying their claim. They also pray for general relief
The defendant, John W. Andrews, to the bill of the plaintiffs, pleaded the statute of 1748, which provides a bar against the recovery of all fines, penalties and forfeitures, unless the action, suit or prosecution for the same shall be brought within six months from the commission of the offence.
The defendant also filed an answer, in which he denied all the allegations of fraud in the plaintiffs bill. He admits, that he owns a small stock of goods. He also admits, that he bought the tract of land mentioned in the bill, from Samuel Lynes, but says, that he has a legal title for the same; explains why the title was not sooner executed, and denies all fraudulent concealment about the same.
The other defendants have also answered, but as their answers have not been presented in the brief, I will not attempt to state what these answers contained.
When the case came to be tried, the Chancellor decided it upon a preliminary objection. He says in his decree: “ The bill professes to be filed with leave of the Attorney General, but it is not filed in his name on the relation of the plaintiffs. This of itself is a great, — I think, a fatal irregularity.” The bill is filed, as I have before stated, in the names individually of the plaintiifs, styling themselves Commissioners of Public *10 Buildings of Charleston District. The formal consent of the Attorney General is indorsed upon the bill under his own signature. This I think is sufficient. The consent of the Attorney General is a matter of course, and is a mere form. The act prescribes that the fines shall be paid directly to the Commissioners. Their receipt would be a legal discharge. And where a person is entitled to receive, he has, or ought to have the right to sue for money, or anything else, unless the law which gives him the right to receive, clearly designates some other to bring suit, where it becomes necessary. But the Court does not now decide that question ; as for the purposes of this case, it is unnecessary now to be decided. The Court is unanimously of opinion that the irregularity, (if it be one,) should be objected to by the defendant himself, and not by the Court on its own motion. The Court is also unanimously of opinion, that the defendant should take advantage of the irregularity by plea in abatement, and that it would be too late to take advantage of it in that form, after pleading to the merits.
We also think the Circuit decree erroneous, in applying the bar of the act of 1748 to the claim of the plaintiffs. That act obviously refers to the original prosecution, where the defendant is indicted for the offence, to which this act may be pleaded in bar, if the prosecution has not been commenced within six months after the commission of the offence charged in the indictment. But it has no application to any proceedings which may be instituted for the enforcement of the sentence.
It remains for me to consider what disposition is now to be made of the case. The case on the Circuit was only tried upon the preliminary questions, which arose upon the pleadings. The Chancellor did not consider the evidence offered to support the allegations of fraud charged in the bill. It was much discussed here, whether the plaintiffs had exhausted their legal remedy, which would be indispensable to their having a status in this Court. There were strong grounds for concluding that they had not. But as these reasons did *11 not appear upon the plaintiffs’ bill, and as the case was not considered by the Circuit Court on the evidence, nor that evidence set forth in our briefs, this Court decides nothing on that question now. If it should appear that the defendant, at the time of filing the bill, was possessed of property — real or personal — sufficient to satisfy the plaintiffs claim, which could be levied upon and sold by the sh'eriff, under a writ of fieri facias; or, not possessing that much property subject to levy and sale, did not possess other property, which required the intervention of this Court to subject it to his debts, then the bill must be dismissed for the want of equity.
Under these views of the case, it is the judgment of this Court, that the Circuit decree be set aside, and the case remanded to the Circuit Court for a new trial.
It is further ordered, that, at such trial, the evidence already taken be read, and that any party to the bill be permitted to introduce any additional evidence.
Dunkin and Warddaw, CC., concurred.

Decree reversed.